### SEIBERLING v. FIRESTONE TIRE & RUBBER CO.

(District Court, N. D. Ohio, E. D.   April 25, 1916.)   No. 236.

1. PATENTS ⊂⇒328—VALIDITY AND INFRINGEMENT.
     The Seiberling and Stevens patent, No. 762,561, for machine for making outer casings for double tube tires, was not anticipated, and discloses invention of nearly a pioneer character, which entitles its claims to a liberal construction. Claims 1, 2, and 14 also *held* infringed.

2. PATENTS ⊂⇒328—VALIDITY AND INFRINGEMENT.
     The State patent, No. 941,962, for Pneumatic tire shoe manufacturing machine was not anticipated, and discloses patentable invention, although for improvements and not of broad scope; also *held* infringed.

In Equity. Suit by Frank A. Seiberling against the Firestone Tire & Rubber Company. On final hearing. Decree for complainants.

Squire, Sanders & Dempsey, of Cleveland, Ohio, and Robert F. Rogers, of New York City, for plaintiff.

Charles C. Linthicum, of Chicago, Ill., and S. H. Tolles, of Cleveland, Ohio, for defendant.

KILLITS, District Judge. It is to be regretted that time is yet unavailable to the court for that full analysis which this case deserves of the reasons impelling the court to a decree for complainant. As the importance of this cause, however, is such that a review is not improbable, we trust that a brief discussion of the impressions entertained by this court will meet whatever demand exists for a memorandum from the court of first instance.

[1] We are unable to find proven any anticipation of either Seiberling and Stevens' (patent No. 762,561) or State's (patent No. 941,962) inventions, except so far as the latter may be said to have been, in part, at least, anticipated by the former. It seems clear that State's patent is decidedly narrowed by the earlier grant to Seiberling and Stevens.

None of the alleged anticipations was either intended to produce, nor had the capacity to produce, one important result which is one of the desiderata aimed at both by the patentees of the grants in suit and the defendant, namely, to lay down the fabric so that a structural re-arrangement thereof would be brought about to meet most efficiently the changing direction of strain to which a tire is subjected in use, circumferential, transverse and, to some extent at least, torsional. That these inventions do operate to stretch the fabric circumferentially of

the tire and also on the wings of the fabric, as it is being laid down, in the direction of the radius of the circumference, and that these results are highly desirable in an efficient product, no one has very effectively disputed.

The patents to Johnston (No. 669,837), Moore (No. 512,112), and Caldwell Syndicate (British No. 23,135 of 1898) are for the application of fabric woven to approximately the shape it is to take in the tire, the fabric to be used on the Johnston or Caldwell machine having rather more shaping toward the radius than that contemplated for Moore's use, the latter also using a fabric already formed into a ring or endless band. In neither of these is there a suggestion that what the patentees of the grants in suit sought to do, to the result above alluded to, was aimed at. Neither does Jeffery (No. 607,-245) seek this result. He offers no means for reducing the circumference of the wings of the fabric so that, stretched radially, it will tend in the process to take cylindrical shape.

Vincent's patent (No. 794,473) is later than that of Seiberling and Stevens. He does not specify any purpose to rearrange the fabric cords or to stretch it radially, unless such may have been in his mind in the statement that he proposes—

"to shape and stretch the canvass layers exactly to the same amount whatever be their number, so as to permit the different elements of the tire to work equally."

We do not understand that any one in this case is seriously claiming that Vincent's machine brought about successfully the entire result aimed at in the inventions owned by complainant, or to say that the "patting" into contact and place of the successive layers of fabric to the shape of the core by Vincent's stepped paddles effected the same desirable result which flowed from the operation of the spinning wheels which both parties to this case use.

In view of the working of Plaintiff's Exhibit 32 in the presence of the court, and of the testimony of Hall that this exhibit was made exactly after the detail of drawings in the Seiberling and Stevens patent in suit, and of the product of this exhibit in practical use shown in evidence, and, further, in view of the state of the art at the time the Seiberling and Stevens application was made, we feel justified in concluding that their invention was not only the first practical invention to produce mechanically automobile tires having the qualities of service demanded in the use thereof, which qualities were peculiarly the fruit of mechanism effecting the rearrangement of cords to meet the various directions of stress, above alluded to, but that it employed therefor novel and patentable combinations of mechanical elements; that it was decidedly an advance step in the art and so far occupied the field that it anticipated, in a large measure, both the State and Stevens inventions.

In fact, we regard the Seiberling and Stevens mechanism so nearly pioneer invention that the claims of the patent grant therefor should receive liberal interpretation, and we are forced to hold that the three sued upon, Nos. 1, 2, and 14, are valid. The judgment of the court in this respect is not shaken by a consideration of the shaping devices.

employed by any of the patents above referred to. That the rolls employed by Moore to assist in shaping the fabric could not perform the functions of complainant's spinning-rolls was pretty thoroughly exhibited to the court in the fact that a modification of Moore's mechanism was shown to be necessary in order to get it to work at all upon complainant's core. As Moore did not design any of his devices to perform the functions of a spinning-roll, the fact that a modification might induce any one to perform that function is not anticipation. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658. He does not claim the result which both parties to this case admit is desirable, alluded to above; nor can it be seen in a study of the Moore invention that his mechanism would bring that result about, especially when we consider that it was intended only to be used upon pre-shaped fabric already formed into a ring or endless band.

Seiberling and Stevens' machine is the only one, at their application date, offering a mechanism by which, through a hinging or folding action advancing by short stages only, and thereby occupying such small areas of the fabric that the tendency to wrinkle under contraction is overcome, the fabric is gradually laid down with a rearrangement of the cords thereof taking place, so that the radial tension due to the compression of the tire is provided for and a fabric originally flat is laid into a cylindrical shape in the form of a tire carcass, with an absence of wrinkle on the inner side. It would seem that a machine which is the first with capacity to take flat and unshaped fabric and transform its cord structure in such a way as to form from it an endless tube, with the demands of tension brought about by use met in all particulars, is a decided step in advance. This is what the Seiberling and Stevens invention did, for the first time, so far as this record informs us, and, judging from the fact that both parties aim to produce the same result, it must have been essential that the invention should so stretch the fabric that the otherwise square spaces formed by the intersection of its cords should become lozenge-shaped, circumferentially, on the tread, and, on the sides, radially with increasing or decreasing greater chord according to location.

Without going into the extensive detail necessary to exhibit our difficulties, it is enough to say that, having regard to its specifications and the results aimed at, we are unable to read any one of the claims in the Seiberling and Stevens grant on the structure shown by any one of the alleged anticipating patents referred to, and, of course, their claims are not remotely comparable to those of this patent, and not anticipatory when we regard again what the Seiberling and Stevens invention set out to do, and did in fact do, although, perhaps, subject to improvement of detail.

In this connection we might say that we are unable to follow counsel for the defendant in finding anything in the Seiberling patent (No. 725,155) inconsistent with the foregoing conclusions.

[2] As indicated above, we are forced to the conclusion that the Seiberling and Stevens grant very greatly narrowed the field for State. We are not, however, able to find anything in either Seiberling and Stevens, or in Vincent's patent which substantially impairs the pre-

sumption, to be indulged by this court, that the Patent Office was provident in its grant to State or in the allowance of any claim to State, or that State's patent, when regarded as for an improvement in the art of forming a tire carcass out of flat fabric by mechanical means, is anticipated. Nor do we feel called upon, for the present purposes, to take up each of the State claims sued upon to sustain this memorandum by an analysis and criticism of them respectively. It is sufficient to hold that we regard this patent as valid, and that we do not discredit any one of the claims sued upon. Some of them may include devices which were old, as the take-up roll, or the stretching-roll, but these old devices are used in new combinations, as coacting elements, bringing about results not before flowing from any combination.

If State occupied the primacy of Seiberling and Stevens, it might be said of his invention, as it may be of their's, that, even if it were a combination of old and known devices, yet accomplishing successfully a new result, or an old result more efficiently and to a greater commercial advantage, it is patentable. Webster Loom Company v. Higgins, 105 U. S. 590-591, 26 L. Ed. 1177.

It is not shown that either the Seiberling and Stevens combination, even if of old and known devices, or State's, adding to the elements of the former combination other old devices, was obvious to attain the advantages sought and gained. The desirability to do what these inventions accomplish must have been very apparent—how to do it plainly did not readily occur to mechanics skilled in the art. In our judgment, therefore, and on the authority just cited, it makes no difference whether or not *all* the operations performed by the devices in either combination were customary to and known to hand work.

State's invention is, of course, an advance on that of Seiberling and Stevens, the special features being the mechanism for spinning the fabric and in the take-up roll. Comparing defendant's machine with State's, we find that the two have all essential features in common so far as invention is concerned. Some of the features of the two they hold in common with Seiberling and Stevens. That is, regarding Seiberling and Stevens' invention of such character that its claims are entitled to a liberal interpretation, its first claim may be read on either State or Stevens. Each has combination "of a tension device to simultaneously smooth and flatten strips of fabric, a revoluble core to receive said strips from said device, means to form said strips approximately longitudinally about said core," whatever may be said of the balance of the claim, "means to regulate the tension on said feeding device." We are not unmindful of the contention of defendant that it employs no "means to form said strips approximately longitudinally about said core," but that is precisely what the combination of its so-called retarding-roll and its spinning-rolls accomplishes. We have been unable to comprehend the distinction sought to be made between the effect of defendant's so-called retarding-roll which has a concave surface fitting upon the convexity of the core and the tread-forming roll employed by Seiberling and Stevens on top of the core and by State near that part of the core's circumference opposite to the point

where the fabric engages the core. It looks to us as though the so-called retarding-roll performs precisely the same function of tread-forming, and passing over the same amount of fabric in the operation, which is performed by the tread-forming rolls of either of the other two inventions.

As we read defendant's brief, we are struck with the fact that, going to the first claim of Seiberling and Stevens, it analyzes it to make but one element of the tension device and the means to regulate the tension. As we read this claim, there are two elements, one of a tension device, and one by which the tension which results from the device is regulated, one of which clearly is employed by Stevens as well as by State. If Seiberling and Stevens have one element (the regulation device) which is unnecessary in practice, a combination omitting it but having all the other elements of this first claim, cannot be said to be patentable against that claim.

But State, and subsequently Stevens, offered mechanism in advance of the primary invention both to spin the fabric upon the core and to take up the strip of cloth interposed between the layers of fabric on the stock-reel to keep them from sticking together. Defendant made much of the assumption that State's invention was limited to spinning-rolls set at a receding angle to the core, and insisted its mechanism offered a distinct and patentable improvement in that its spinning-rolls "tilted" with reference to the core, but State does not limit his claims to a roll set at a receding angle. In alternate claims the spinning-roll is described as an element of combination in these terms:

"Spinning-roll mounted on the support for passing radially along the sides" or "a spinning-roll mounted on the support at a receding angle to the plane . of the core for passing radially," etc.

. Whenever a claim in the State patent uses the spinning-roll in combination with the first description, it is broad enough we think to cover Stevens' structure for the same mechanism. If in practice it were found that a "tilting" adjustment of the spinning-roll to the core was of advantage, it strikes us that the thought would readily occur to one of ordinary mechanical skill and bent on working out a practical machine. So considering the attempts to discriminate between these two machines, because Stevens' roll "tilts," the applicability to the Stevens mechanism of those State claims which do not limit the roll to one which is not at a receding angle is apparent.

Take the fourth claim, for instance; every element of that combination is found directly or in mechanical equivalent in the Stevens machine. Take the twelfth claim, for another example; every element in combination described therein is found either actually or equivalently performing the same functions to the same end in Stevens' machine. Of this claim it may be said that it covers every essential element of the Stevens machine not found elsewhere described in State or taken from Seiberling and Stevens, except the brass horn over which Stevens first passes his fabric and which is admittedly devoid of a necessary function. The Stevens take-up roll is found in State's and the remaining essential elements are found in all three.

Our conclusion is that the Stevens machine used by defendant is

substantially the State invention. If we could follow defendant in its claim that the State patent had been anticipated in any substantial degree to its avoidance as a valid grant by the Seiberling and Stevens grant, we should be compelled with equal force to hold that the Stevens mechanism was also wanting in patentability for the same reason. Considering the primacy of the Seiberling and Stevens invention, and the character of its claims, especially the first, the conclusion which would find either State's or Stevens' combinations without patentability, because anticipated, would make the use of either infringement. Decree will run for the plaintiff, finding both his patents valid and infringed by defendant.