## MURRAY RUBBER CO. v. DE LASKI & THROPP CIRCULAR WOVEN TIRE CO.

Circuit Court of Appeals, Third Circuit.
October 3, 1927.

No. 3554.

1. Patents ⬳17(1)—Where steps by mechanism supplanting hand operation are same, and succession from one to the other is same as those in manual art, there is no "invention."

Although invention may be found in mechanism that supplants hand operation, particularly where mechanism, in way of its own, dispenses with human element, where there has been no substantial change in mechanism or method of making product, and steps are same, and succession from one step to the other is the same as those in manual art, general rule of patent law is against "invention."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

2. Patents ⬳328—No. 1,119,326 for machine for building tires having mechanism for forming tire fabric on core both under and over bead cores held invalid.

Patent No. 1,119,326, issued to J. E. and P. D. Thropp and A. De Laski, for machine for building automobile tires, comprising core on which tire may be built, means for placing tire fabric and bead cores thereon, and single mechanism adapted to move radially with respect to core and arcuately in plane substantially at right angles to plane of core for forming tire fabric on core both under and over bead cores, held invalid.

3. Patents ⬳19—Larger spinning rolls on machine for laying on fabric of automobile tires held no invention.

Larger spinning rolls on machine for building automobile tires, having a mechanism for forming tire fabric on core both under and over bead cores, held no invention.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit by the De Laski & Thropp Circular Woven Tire Company against the Murray Rubber Company. From the decree, defendant appeals. Reversed with direction.

Rogers, Kennedy & Campbell, of New York City (Drury W. Cooper and Luther E. Morrison, both of New York City, of counsel), for appellant.

E. Clarkson Seward and W. Saxton Seward, both of New York City, and Thomas G. Haight, of Jersey City, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This case is another chapter of long patent litigation, here and elsewhere, concerning means for mechanically laying on the fabric and building up the carcas of an automobile tire. As the prior art is revealed by the patents and stated at length in the cases which we shall cite, and, particularly, as this decision will be of interest only to those who are familiar with the art and with the device of the patent in suit, we shall do little more than trace the principal parts of the controversy and show how they have been affected and, we think, adjudged, by previous judicial decisions.

The art of making automobile tires, like most arts, began with the hand of the artisan and developed into machines. It is therefore divided historically and actually into the manual art and the mechanical art. The problem is the same in both, that of building a tire carcas of a plurality of superimposed rubberized fabric plies or layers. At their inner edges, the fabric plies are attached or anchored to beads or bead cores which are used in mounting the tire on the wheel rim. The thing that is sought and must be obtained in laying on each fabric layer over the tire core and over the bead is a perfectly smooth stretch, that is, the ironing out of all creases and wrinkles which when present tend inevitably to weaken the tire. To accomplish this, two methods were em-

ployed in the hand art: One, the "saw tooth" method, with which we have nothing to do; and the other, the hand "spinning" method, with which we have all to do.

In the manual art the tire carcas was built on an annular metal core or mandrel of the same shape and size as the interior of the tire to be made. This core was rotatably mounted in vertical position and could be turned at slow speed or high speed either by hand or power. The workman, in the first operation, stuck one end of a cement-coated ply of fabric to the periphery of the core and then, by turning the core slowly, pulled on the fabric until it stretched entirely around the core and the two ends overlapped. Thus the strip adhered to the tread portion of the core and its sides or skirts were left free and unattached. In the next operation he took a hand tool commonly termed a "spinning roll" which consisted of a steel disc two or three inches in diameter rotatably mounted in a suitable forked handle, and, while the core was rotating at high speed, he placed the edge of the spinning roll at the point or line of the fabric where it ceased to adhere and moved the roll slowly in a radial direction along the side of the core, pressing the fabric firmly against the core so as to make it adhere smoothly throughout its surface. Becoming skilled, the operator later held such a tool in each hand and in one operation smoothed the fabric on both sides of the core down to its edges where the beads were to be attached.

Practically all of the mechanical art has been devoted to adapting these essentials of the hand art to machinery, resulting not even now in a successful machine for the complete automatic manufacture of tires, yet arriving, perhaps, in its highest state in the device of the patent in suit (No. 1,119,326, issued December 1, 1914, to J. E. and P. D. Thropp and A. De Laski) which, as shown by its 792 lines of carefully detailed specification and 148 claims, is a congeries of about everything mechanically worth while that had gone before. We shall therefore look at the prior mechanical art as we find it in the device of the patent in suit, which for brevity we shall term the De Laski device. Although a highly complicated mechanism it is typically described in claim No. 136 as follows:

"A machine of the character described comprising a core upon which a tire may be built, means for placing tire fabric and bead cores thereon, and a single mechanism adapted to move radially with respect to the core and arcuately in a plane substantially at right angles to the plane of the core for forming the tire fabric on the core both under and over the bead cores."

The first element of a core upon which the tire may be built was the genesis of the art and runs through all its history. Later came means for placing the tire fabric on the core. The invention, if any, rests in the third element. This is a mechanism of a specific kind intended to do the old hand art trick of smoothing out wrinkles from the fabric layers. Mechanism for that purpose was also old. To distinguish this mechanism in the De Laski device from that common to the art, we must describe it in some detail.

In De Laski there are two arc guides or arms positioned immediately in front of the periphery of the vertical core and extending, respectively, to the right and left around but apart from the core. Connected with and at right angles to each arm is mechanism carrying a spinning roll similar in design and for all practical purposes identical with the spinning rolls of the hand art. In other words, instead of being held by the hands of the operator, these spinning rolls are here held by the arcual arms. After a fabric layer has been placed on the core the operation of smoothing begins. The core is made to rotate by power and the guides or arms are made to co-ordinate automatically in their movement toward and around the core, carrying the weight-pressed spinning rolls around the upper curve of the core and down its sides at substantially right angles, thus ironing out all wrinkles and producing the required smoothness of the fabric. When the edges of the tires are reached, that is, where the bead is encountered and the position of the spinning rolls has to be changed, the arrangement tips and the operator manually adjusts the arms supporting the spinning rolls with respect to the new problem of smoothing down the fabric around the beads. When this is done (i. e., the angle of the spinning rolls changed) the arms are again set in motion and the spinning rolls mount the beads and smooth out the fabric as they pass over their upper and lower sides. The operation thus completed is automatic in the sense that from the start down the sides of the core no manual assistance is necessary and after the stop, hand readjustment for the bead and the new start, that operation is also automatic. If De Laski had made a broad jump from the hand art to this machine he would have created a device, if not of patentable novelty, certainly of patentable utility, because it greatly facilitates the manufacture of tires over the hand art. But before he made his device De

Laski was preceded by many mechanicians whose work he adopted and implanted in his machine, only one of whom shall we discuss at length. He was State, whose patent was in litigation in Firestone Tire & Rubber Co. v. Seiberling (C. C. A.) 257 F. 74, Seiberling v. John E. Thropp's Sons Co. (C. C. A.) 284 F. 746, and John E. Thropp's Sons' Co. v. Seiberling, 264 U. S. 320, 44 S. Ct. 346, 68 L. Ed. 708.

State was before De Laski in making a long stride from the hand art to the machine art. (Letters Patent No. 941,962.) He built a machine in which he provided (1) a ring core; (2) means for supplying tire material to the core; (3) a little turret on which were arranged four mechanical means for doing four different things at different times, at the will of the operator, to only one of which we shall advert; namely, a spinning mechanism comprising core-enveloping arms which carried spring-pressed spinning rolls for smoothing the tire material on the sides of the core. It will be observed that, except the turret, all these De Laski took and all these he uses as State used them, in an improved way, perhaps, but mechanically in the same way to do the same things. The only difference between what De Laski did and what State did in an inventive way, if such it were, was that De Laski did not stop where State stopped in using the spinning rolls to smooth out the fabric down the sides of the core to their edges but went further and, calling upon a manual adjustment of the mechanism, caused the same spinning rolls to go on and mount the bead and smooth its fabric also. If there is invention in the De Laski device it seems to us that it must reside solely in the mechanism for this last move and whether or not it is invention depends upon the preceding mechanism as it has been viewed and, we think, adjudged by the Supreme Court in the Seiberling Case, supra. We feel justified—indeed, obliged—to look upon the De Laski device in this way because of a sequence of certain litigious events. They are these:

Seiberling, the owner of the State patent, thought the De Laski device was enough like State to justify an action for infringement. Hence the Seiberling-Thropp suit, supra. When that suit reached this court we thought the State patent valid and that the State and De Laski devices were so alike that De Laski infringed State. On appeal the Supreme Court found the State patent invalid and, though on that finding the issue of infringement of the State patent by the De Laski device was, of course, not reached, the plaintiff here, the owner of the De Laski patent, regarded that decision—certainly in its favor on the invalidity of State—as though it sustained the De Laski patent and instantly aroused the suit at bar which had been slumbering for a year in the District Court and pressed for a decree against the alleged infringing device of the Murray Rubber Company, the defendant here, which that company claims is nothing but State and which, certainly, has much of State in it. So we must look upon the De Laski device through the State patent adjudged invalid, and, of course, we shall look upon the State patent in the way the Supreme Court looked upon it. That court did two things: It found that State's arrangement of means for different purposes was an aggregation, not a combination, and therefore not patentable. It then went further and dealt separately with the elements of the aggregation and held that neither singly nor in group did they involve invention. We shall apply this reasoning to the De Laski device and follow it down to the bead, and then over the bead.

Returning to quoted claim No. 136, it would seem that the invention is a claimed combination comprising three elements. The first is a core upon which a tire may be built, the specification showing that the core is rotated by power. A core rotated by power is, as we have said, very old. It is found in patents granted to Moore in 1904 (No. 518,-112) and to Seiberling and Stevens in the same year (No. 762,561), also to Vincent in 1905 (No. 799,473), to Mathen by a Belgian patent in 1906 (No. 194,731), as well as to State in 1909 (No. 941,962). We think there is no invention in using a core on which to build the tire carcas or in rotating the core by power, but, if there is, De Laski was anticipated five times.

The second element is means for placing tire fabric and bead cores on the core. Both these means are found in Seiberling and Stevens, Vincent, Mathen and State. In this we see no invention; but, if wrong, then De Laski was abundantly anticipated.

And, finally, we come to the third element, which is the arm mechanism carrying the spinning rolls. Before discussing this element it may be pertinent to note that the function of the rotating core is a thing separate and apart from the functions of the remaining means, and that the function of the means for placing the tire fabric on the core is likewise separate and apart from all other means and is completed before the function of the spinning roll begins. The third element of arm-supporting spinning

rolls has its own separate place and function. Therefore, with Seiberling v. Thropp in mind, the three elements thus grouped look very much like an aggregation, not a patentable combination. But in view of what is to follow, it seems unnecessary to decide this case on an issue of aggregation or combination. We shall center our attention on the important third element of outstanding guides or arms carrying the spinning rolls.

Arms of this character in their simplest form are found in the Belgian patent to Mathen where they were not placed horizontally in front of the core but were suspended vertically just above the curve of the core and permitted to hang down near its two sides where the operator could grasp them by conveniently placed handles and press the spinning rolls at their ends against the fabric on the core as it rotated. State had arms differently positioned. They were placed in front of the rotating core and caused to project horizontally toward and to the outside of each face of the core with the spinning rolls held against the fabric of the core by spring pressure and the spinning roll movement manually regulated by the operator. Of this arrangement the Supreme Court said:

"There was no novelty * * * in the use of pressure rolls to stretch and press the tread at the slow speed of the core followed by the spinning of the stretching or spinning rolls with high speed down the sides from the outer line of the tread to the bead edge of the fabric."

[1, 2] The De Laski device at this point differs from State only in that instead of a regulation of the spinning rolls "from the outer line of the tread to the bead edge of the fabric," partly by pressure means and, as it nears the edge, partly by hand, as in State, its mechanism is made to co-ordinate mechanically with the rotation of the core and the down-side movement is effected by the arcuate mounting without manual guiding. Both De Laski and State were attempts to do by partly automatic machinery what had commonly been done by hand and to do it in the way it had been done by hand ex-

cept metal arms took the place of human hands. Invention may be found in mechanism that supplants a hand operation, particularly where the mechanism, in a way of its own, dispenses with the human element, as notably in the candy pulling machine of Thibodeau (Schute v. Hildreth [C. C. A.] 8 F.[2d] 131), but where there has been no substantial change in the mechanics or method of making a product and the steps are the same and the succession from one to the other is the same as those in the manual art, the general rule of the patent law is against invention. Jones v. General Fireproofing Co. (C. C. A.) 254 F. 97; Marchand v. Emken, 132 U. S. 195, 199, 200, 10 S. Ct. 65, 33 L. Ed. 332; Thropp's Sons' Co. v. Seiberling, 264 U. S. 320, 328, 44 S. Ct. 346, 68 L. Ed. 708. Therefore, as the Supreme Court "found that there is nothing really new in the method or mechanism of State," the State-like spinner-roll-arm-carrying element of the De Laski device, on authority, lacks invention down to the bead. Now, when the bead is reached the human element again enters. The operator is required to readjust the mechanism for the new task, that of smoothing the fabric over the bead. When readjusted, its next function is precisely that of the preceding one, namely, to level the fabric, this time over the bead instead of over the sides of the core. The problem is the same, the function is the same and it is performed in the same way by the same means. As the means for the next preceding step lacks invention, it follows logically that the means for this last step also lacks invention.

[3] Nor do we find invention in larger spinning rolls. Need for a change in the size of spinning rolls to meet the requirements of larger size tires was obvious.

Aside from any question of invalidity because of aggregation, we hold by force of applicable and controlling authority that the claims of the patent in suit are invalid.

The decree of the District Court is reversed with direction that the bill of the complainant be dismissed.