8

**KENNEDY et al. v. TRIMBLE NURSERY-LAND FURNITURE, Inc.**

No. 1909.

District Court, W. D. New York.

Jan. 22, 1938.

Pennie, Davis, Marvin & Edmonds, of New York City (Merton W. Sage, and Albert J. Clark, both of New York City, of counsel), for plaintiffs.

Harold E. Stonebraker, of Rochester, N. Y. (Kenneth B. Keating, of Rochester, N. Y., of counsel), for defendant.

BURKE, District Judge.

This is a suit in equity to establish patent infringement. Three patents are involved, all of which relate to infants' bathing apparatus. Plaintiffs ask for an injunction and an accounting. The defendant denies both infringement and validity of the patents. Ann M. Kennedy acquired a one-third interest in the patents in suit prior to the commencement of the action. The defendant was formerly known by the corporate name of E. M. Trimble Manufacturing Company, Inc. The name was changed to Trimble Nurseryland Furniture, Inc., December 17, 1929, and the defendant assumed all of the liabilities of its predecessor.

Application for patent No. 1,510,596 was filed March 6, 1920. This application described a bath cabinet, and the patent when granted on October 7, 1924, was designated as a "Bath Cabinet." This covered a heavy and expensive apparatus which may be called a large door model.

Application for patent No. 1,767,800 was filed July 25, 1921, and letters patent issued thereon June 24, 1930. This application and patent also covered a bath cabinet, but of lighter construction than the large door model. It may be referred to as the small door model.

The third patent in suit is No. 1,693,389. This application was filed July 23, 1923, and letters patent issued thereon November 27, 1928. This model was essentially different from the door models. It was designated in the patent as an infant's bathtub. It was a collapsible tub supported on folding cross-legs with a table which overlaid the tub when in an operative position and had a screen guard detachably connected to the support. It was not enclosed in doors when folded as were the two door models. It may be referred to as the cross-leg model.

These three patents above referred to are the only patents which plaintiffs claim were infringed by defendants. The original bill of complaint charged the defendant with infringement of a fourth patent No. 1,693,-391, a cross-leg model. At the opening of the case the plaintiffs moved to amend the complaint to withdraw this patent from the

suit and to withdraw one of the claims originally relied on of one of the remaining patents in suit. As to that claim a formal disclaimer had been filed in the Patent Office. Plaintiffs asked a dismissal as to patent No. 1,693,391 without prejudice. This was opposed by the defendant, and decision was reserved.

■ The plaintiffs have a' right to dismiss their bill of complaint unless some definite prejudice will result to the defendant other than the possibility of future litigation connected with the subject matter. Elliott Addressing Machine Company v. New England Tel. & Tel. Co., D.C., 20 F.Supp. 279. The motion to dismiss as to patent No. 1,693,391 is granted without prejudice.

Up to the year 1923 the bathing apparatus constructed under these applications was manufactured by Kiddie Town Products, Inc. This company was organized in 1920 by Dewey M. Kennedy and Benjamin H. Kennedy. In 1923 the defendant took over the assets of Kiddie Town Products, Inc., exempting inventions and patent applications. An exclusive license agreement was entered into between the Kennedys and the defendant's predecessor, E. M. Trimble Manufacturing Company, Inc., which expressly recited the application for the two door model patents in suit and one other application not in suit entitled "Child's Bath Tub" filed April 25, 1921. General language no doubt included application for patent No. 1,693,389, the third patent in suit. The license agreement is dated August 23, 1923. By its terms the Trimble Company agreed to pay a royalty of 25 cents for each article manufactured under the license. The license agreement also gave the Trimble Company the right to use the trade-mark "Baby Bathinette." Manufacture of door models had been discontinued before this arrangement. The Trimble Company manufactured only models with cross-legs under the license agreement with the screen guard affixed to the dressing table and designated their article as "Baby Bathinette."

This arrangement continued from 1923 until 1931, the defendant paying royalties under the license agreement. In January, 1931, the defendant effectively terminated the license according to the provisions of the agreement, notice of which cancellation had been served six months previously. Thereafter defendant continued the manufacture of bath stands under the trade-name "Kiddie Bath." Plaintiffs claim defendant's construction infringes the patents sued on.

■ The defense of laches is interposed. Plaintiffs knew of the alleged infringement almost immediately after the license agreement was terminated. All that they did at that time in the way of notifying defendant that they claimed their patents were being infringed by defendant's article was to insert in a folder describing plaintiff's product a general notice to the trade that the manufacturer who formerly had manufactured and sold the article under the license from plaintiffs under the name "Bathinette" was no longer a licensee and had no right to manufacture or sell any article embodying any of the Kennedy patents, and that any person who manufactured the article embodying the Kennedy patents would be regarded as an infringer. (Exhibit 28.) The only direct notice of the claim of infringement was a letter to defendant from plaintiff's attorney dated November 29th, 1934. (Exhibit 29.) Suit was started January 23, 1935, about four years after the termination of the license agreement.

It does not appear from the evidence that the defendant sustained any damage because of the delay. It continued to make children's articles, including children's bath tubs, after the termination of the license agreement. This was the same business it was engaged in while the license agreement was in effect. If defendant was infringing the Kennedy patents, it needed no notification from the plaintiffs. It had not only constructive notice of the patent claims but actual notice, having manufactured under those patents as licensee. Furthermore, plaintiffs were handicapped in that they lacked the funds necessary to finance an infringement suit. Under the circumstances the plaintiffs are not estopped from maintaining this suit.

■ The article manufactured by defendant after the cancellation of the license agreement was a model with a collapsible rubber tub supported by cross-legs and having a dressing table which overlies the tub when in an operative position and with a screen guard permanently attached to the support. It was not enclosed within doors when folded. It was in no sense of the term a bath cabinet. It was a folding stand. This construction bears little, if any, resemblance to either of the door model patents in suit. Those patents, both the

large door model and the small door model, embrace the essential and fundamental features of a bath cabinet. To ascertain the true meaning of a claim resort may be had to drawings and specifications. Chicago Forging & Mfg. Co. v. Bade-Cummins Mfg. Co., 6 Cir., 63 F.2d 928. Note the language of the specifications of the large door model (Exhibit 1, page 1): "My present invention relates to furniture and more particularly to folding bath cabinets of a kind providing an enclosed tub," etc. The patent drawings disclose a model enclosed within swinging doors when folded. Claims 11 and 12 of this patent are alleged by plaintiffs to be infringed by defendant's cross leg construction. These claims were added long after the original application was filed. It is true that neither of these claims specifically refer to a bath cabinet but describe only the support, the tub, and the overlying dressing table. Nevertheless, when the patent was granted the drawings and specifications covered a bath cabinet and the claims must be construed in that light. No finding that the concept of a bath cabinet had been abandoned during the progress of the application is warranted.

So also is the small door model essentially a bath cabinet. Note the language on page 1 of the patent (Exhibit 2): "To first give a general idea of the principal elements entering into the structure of the embodiment illustrated, we provide a shallow upright body portion or container having two meeting hinged doors at the front. When these doors are extended they form supports for the front edge of the frame of a collapsible tub," etc. This invention was directed mainly to providing a plurality of positions or levels for the dressing table suited to the height of the operator. It embraced the collapsible rubber tub, overlying dressing table and screen guard all enclosed in the cabinet. Claims 7 and 8 of this patent are alleged to be infringed by defendant's cross-leg construction. Neither of these claims specifically refer to a bath cabinet, but describe the support, collapsible tub, overlying table and screen guard. Nevertheless, when the application emerged from the Patent Office, it covered the fundamental idea of a bath cabinet and the claims relied on must be construed in their setting. Here again no inference that the idea of a bath cabinet was abandoned is warranted. So construed defendant's cross-leg construction does not infringe any of the claims of either of the door model patents in suit.

We come now to a consideration of the third patent in suit, the cross-leg model. Defendant's construction bears a resemblance to the invention described in this patent. It is supported by folding cross-legs, it has a collapsible rubber tub, it has an overlying dressing table, and it has a screen guard, all of which are present in the arrangement protected by the patent. Defendant's construction, however, after the cancellation of the license agreement and under the trade-name "Kiddie Bath," had the screen guard permanently affixed to the support. The patented arrangement comprehended a screen guard that was detachable. See specifications, page 2 of patent: "The screen is removed of course when the device as a whole is to be collapsed. * * *" The patent drawings show the screen detached.

The detachable feature was necessary in order that it might function as a folding tub. D. M. Kennedy testified that it necessarily had to be detachable.

Claims 4, 5, and 6 of this patent are alleged to be infringed. Claim 4 defines the folding cross-leg support and the collapsible rubber tub, with a screen disposed to project over the tub when it is extended and detachably connected to the support. The screen includes two wire ends which are bent at right angles and extend into holes in the cross-leg supports. When the screen is in position, the table can only go to a halfway verticle position because the links on which the table is mounted strike the end of the screen guard. In order to fold this arrangement and to collapse the stand and table, it is necessary to remove the screen guard, and when that is done the table can drop down to its lowermost position. As far as the record shows, a structure like this was never manufactured and put on the market. Defendant's construction, mounting the screen guard permanently on one of the cross-leg supports, has the distinction from the arrangement protected by the patent, that the table may be moved from its operative position to its nonoperative position without interfering with the screen guard. The screen guard remains in place. It serves as a screen when the tub is in use and it serves as a screen when the table is in use. When folded, it is still attached. The feature of its permanent attachment without interference with the movement of

the table or with the folding operation is a functional advantage and not a mere rearrangement of position or attachment for the purpose of evasion and subterfuge.

██ This claim, viz., No. 4, with others, was originally rejected by the examiner in the Patent, Office as aggregative. Reconsideration was requested, and in the request for reconsideration attention was specifically called by the patentee's attorney to the combination of a folding tub support and a *detachably* connected screen. (Italics in original argument of patentee, Exhibit F.) The claims were again rejected and appeal taken to the Board of Appeals. The Board of Appeals held claims 4, 5, and 6 patentable. The feature of detachability of the screen guard was an innovation in the art, and for that reason the combination of elements was patentable. The feature of detachability expressly appears in claims 4 and 6 of this patent. It does not appear in claim 5 as finally allowed, but, nevertheless, claim 5 must be construed in the light of the whole patent, the drawings, specifications, and the disclosures during the progress of the application through the Patent Office. The combination of elements, including the feature of detachability of the screen guard, into a unitary structure was accorded a patent. Without this feature there was no change from the prior art. We cannot therefore, disregard it in considering validity, nor hold it negligible when adjudging infringement. Thus construed, the article manufactured by the defendant after the cancellation of the license agreement does not infringe the Kennedy patent, because of the change in the arrangement of the screen guard to permanency, which change served an advantageous functional purpose. The patents should be viewed in the light of the elements chosen by the inventor. Traitel Marble Co. v. Manhattan Terrazo Brass Strip Co., 2 Cir., 60 F.2d 61.

One of the applications for a patent specifically set forth in the license agreement was entitled "Child's Bath Tub." This was filed April 25, 1921. This was the first application that disclosed cross-leg construction for supports, although they manufactured a cross-leg type as early as April or May of 1920. At the time that the license agreement was entered into August 25, 1923, a cross-leg type of tub had been developed by the Kennedys and was selling in large numbers.

It may have been thought by them to be protected by this patent application. The door models had been discontinued. Whether or not they relied on this application for protection of the cross-leg construction, it is significant that during the period of development of this type it was the only application that plainly disclosed cross-leg supports until July 23, 1923, when the application for the cross-leg model in suit was filed, Patent No. 1,693,389. The application of April 25, 1921, for "Child's Bath Tub" never became a patent but was forfeited and abandoned. The device developed by the Kennedys between 1920 and 1922 embodied the elements of this patent application. The screen guard was added to this type by the cross-leg application in suit which was filed July 23, 1923, although the Kennedys manufactured and sold a cross-leg model with a screen guard in the fall of 1921. From the time the license agreement was entered into a number of manufacturers made and sold combination tubs and tables involving cross-leg supports. None of them, however, were sued for infringement of the Kennedy patents, either by Kennedy or by the defendant under its license.

The application for a "Child's Bath Tub" filed April 5, 1921, was based upon a cross-leg stand supporting a tub with a movable table mounted on a stand. The application was denied by the Patent Office and appeal taken to the Court of Customs and Patent Appeals. It was there held that the claims failed to define invention in view of the prior art (Exhibit E). If claims 11 and 12 of patent No. 1,510,596, the large door model, were construed broadly, without reference to the bath cabinet construction, they too would fail to define invention in view of the prior art, and particularly Hagstrom, No. 137866, and Park, No. 1,115,-968.

██ Commercial success is urged by the plaintiffs as evidence of invention over the prior art. Commercial success, however, seems to have been attained, as far as the applications and patents in suit are concerned, before the application for the cross-leg stand, patent No. 1,693,389, was filed on July 23, 1923. Whatever success that had been attained seems to be attributable to the fact that there was supplied to the trade in those early years a light, inexpensive, compact, collapsible, cross-leg stand, something essentially different from their con-

12

cept of bathing apparatus enclosed within a cabinet, as disclosed by the large and small door models. It was commercial success of the cross-leg stand and not of the bath cabinet. D. M. Kennedy testified: "Why was it discontinued?" (The large door model type.) A. "Because it had served its purpose. In marketing that device we set out deliberately to build a piece of furniture that would appeal to the class of the luxury type and when we found that the cabinet type of cabinet had really served its purpose we developed a cross-legged type of tub and that was a type of tub that was selling in large quantities because of our advertising to the luxury class, and those in the lower class knew that the luxury class had one like that and we discontinued the large cabinet type on account of the price and the cost of its construction and furthermore because we couldn't take care of that and take care of the business that was coming in on the cross-leg type of tub."

The article that the Kennedys were offering to the trade in 1922 (Exhibits 5 and 7) was a cross-leg stand bearing no resemblance to the door models. The device covered by application for patent No. 1,693,389, the cross-leg stand with the detachable screen guard, was patentable because it contained the feature of detachability of the screen guard. Neither was this the device that attained commercial success. Commercial success must be weighed in the light of all the circumstances in order that it may be accorded its proper significance. Thropp's Sons Co. v. Seiberling, 264 U.S. 320, 330, 44 S.Ct. 346, 350, 68 L.Ed. 708.

Construing all of the claims relied on of all the patents in suit with the limitations indicated, and which necessarily must attach to the claims, all are valid but none have been infringed by defendant's article.

Specifically, I find and hold claims 11 and 12 of patent No. 1,510,596 valid but not infringed.

I find and hold claims 7 and 8 of patent 1,767,800 valid but not infringed.

I find and hold claims 4, 5, and 6 of patent No. 1,693,389 valid but not infringed.

The defendant is entitled to a decree dismissing the complaint, with costs.

This opinion will serve as findings of fact and conclusions of law in conformity with Equity Rule 70½, 28 U.S.C.A. following section 723.