MOORE et al. v. SAUNDERS.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1917.)

No. 4772.

1. PATENTS ⬡328—INVENTION—MACHINE FOR SEALING ENVELOPES.
The Saunders patent, No. 796,936, for an envelope sealing machine, *held* void for lack of invention in view of the prior art.

2. PATENTS ⬡26(1)—INVENTION—"COMBINATION" OF OLD ELEMENTS.
To constitute a patentable combination of old elements there must be coaction between them, and not merely a successive co-operation in which each performs alone its old function.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Combination.]

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suit in equity by Daniel G. Saunders, Jr., against G. L. Moore and G. A. Alexander, doing business under the firm name of Moore & Alexander. Decree for complainant, and defendants appeal. Reversed.

Franklin F. Phillips, Jr., of Boston, Mass. (Pew & Proctor, of Kansas City, Mo., on the brief), for appellants.

Arthur C. Brown, of Kansas City, Mo. (Nathan Heard, of Boston, Mass., on the brief), for appellee.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

HOOK, Circuit Judge. [1] This is a suit by Saunders against Moore and Alexander for infringement of patent to Saunders, No. 796,936, August 8, 1905, for improvements in envelope sealing machines. On final hearing the trial court held that defendants' device

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

infringed claim 5 of the patent in suit, and rendered a decree accordingly. Defendants appealed. Claim 5 consists of the following elements: (1) A feedboard; (2) a gage plate at one side of the feed board; (3) a stop board behind the feed board, there being a passage under the stop board; (4) a soft-rubber feed cylinder under the stop board to engage the bottom one of the pile of envelopes upon the feed board; (5) a presser bar mounted behind the stop board in position for the envelope to pass under the presser bar; (6) means of opening the flap; (7) means of moistening the flap; (8) means of closing the flap. The trial court was of the opinion that plaintiff's presser bar or controller behind the stop board and his means for opening the flaps of the envelopes were new, and that defendants' retarding rubber finger and flap-opening means were infringing equivalents. We think it clear that there was no other element in the claim entitling plaintiff to prevail, and shall so confine our discussion.

In patent No. 390,277, to Allen, October 2, 1888, there is the customary platform for feeding a stack of sheets of paper. It is said:

"This invention relates to improved apparatus for feeding paper to printing presses, paper-damping machines, paper-ruling machines, envelope machines, and the like; and its object is to insure the regular and even supply of the paper sheet by sheet from a pile or stack of sheets."

The illustrations disclose a stop board against which a stack of paper or envelopes rests. They are fed from the top, instead of through a horizontal opening at the bottom of the stop board, as in the patent in suit. The forward edges of the sheets are pressed up into contact with a revolving feeder wheel, which is faced with rubber, and which engages the upper sheet and carries it forward. This is very like the plaintiff's device reversed in position. Allen's specifications then continue:

"A frictional pad or retarder is arranged beneath the feeder wheel, in order that, if more than one sheet should move forward, it will arrest the lower sheet or sheets, and permit only the upper one to be fed."

This is precisely the operation of plaintiff's device, excepting that the positions are reversed. Allen's retarder is recessed in the stop board, while plaintiff's is behind it; but such differences are not mechanically or functionally important. The frictional pad or retarder of Allen is actuated by a spring just as plaintiff's presser bar is, and its operation is the same. Allen's fourth claim contains the following elements: (1) The combination of a rotating feeder wheel; (2) a table for supporting a pile of paper beneath said wheel; (3) a fixed plate or stop in front of said table; (4) a frictional pad or retarder arranged against said stop, and between it and in front of the pile of paper, and constructed to move vertically; and (5) a tensile device for pressing said pad upwardly against said wheel. The arrangement of plaintiff's presser bar or retarder behind the stop board performs no different function than Allen's, nor does it perform it in a substantially different way.

Patent No. 674,050, to Wilkinson, May 14, 1901, is for an improvement in machines for sealing envelopes. The objects of the invention are:

"To provide means for so adjusting the feeding and sealing rollers as to accommodate them to well-filled envelopes; * * * to provide simple and efficient moistening devices which shall be capable of adjustment for envelopes of different sizes; * * * to provide simple and accurately operating devices for automatically feeding envelopes to be sealed."

In this machine the envelopes are fed from the bottom through an opening in the stop board, with the gummed face of the flaps down, as in plaintiff's. Fastened to the bottom of the stop board are two spring fingers, 76 and 77, one of which is described as being "quite flexible." This finger operates as a retarder. It is, however, on the opposite side of the stop board from the one in the patent in suit.

In patent No. 109,882, to Donnellan, December 6, 1870, there is a stop board with a horizontal opening at the bottom through which the envelopes are fed one at a time. The moving mechanism is two cams, which carry the letters forward. They perform the same function as the rubber-surfaced wheel of plaintiff and the wheel and belt of defendants. An elastic stop, marked K, bolted to the bottom of the stop board, is made an element of the first claim of the patent. It is said:

"The object of the stop K is to prevent but one letter passing out of the feed device at a time, and this may be adjusted so as to adapt it to letters of various thickness."

That is similar to the construction of defendants' device, which is bolted behind and to the bottom of the stop board. Its operation is precisely that of plaintiff's presser bar and defendants' elastic finger. In specifying cams for carrying the letters forward, Donnellan says he does not confine himself to that method.

In considering plaintiff's means for opening the flaps of the envelopes, and for that matter, also, moistening and sealing them, patent No. 695,408, to Madas, March 11, 1902, is important. In this patent the moistening pad and the blade which engages the flap are together, the former on the under side of the latter. Madas says that the metal holder of the moistening paid is—

"provided with a sharp edge, so as to engage the flap of the envelope in order to moisten the same. The moistening pad is inclined from the support n to a higher point at its outer end, and is arranged with the sharp edge nearest the front of the box s, and with the sponge side opened on the under side."

Again:

"The envelopes are placed between the partitions and the front of the box s singly or in a pile, each envelope arranged with its flap side downward and the flat edge adjacent the side of the box."

After describing the opening at the bottom of what is equivalent to a stop board, Madas continues:

"As the envelope is carried through this opening, the sharp edge of the moistening pad engages the flap and the finger $n^2$ presses the mucilaged surface in contact with the sponge."

There are other significant portions of the specifications by Madas, and it clearly appears that plaintiff's means of opening the flap were not new.

[2] The plaintiff contends that defendants' machine infringes notwithstanding various structural differences, and in doing so he asserts against defendants a range of equivalents which he denies to the prior art. If the same measure of equivalency is applied on behalf of the prior art, there is nothing patentably novel in plaintiff's structure. His departure mechanically was slight. It was no greater than that which marks the difference between his devices and those of the defendants; and in function they were all alike. No ingenuity was displayed in coupling an old feeding device with means for opening, moistening, and sealing, which were also old. To be sure the new assemblage accomplishes as an entirety more than either old element did in separate operation, and in a way the elements were, as was said below, "successively co-operative." But the co-operation was like that of the successive changes of horses in a coach journey from London to Bath. Those out of London, their task done, dropped their burden at Maidenhead; others picked it up there, and carried it to Newbury; and so on to destination. There was, of course, a "successive co-operation"; but in the sense of the patent law a patentable combination of old elements means more than that. In Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749, the court expressed the requisite in this way:

"In a patentable combination of old elements, all the constituents must so enter into it as that each qualifies every other."

There must be a coaction between them, and not a mere hitching up of separate contributions, each one of which continues independently to perform its customary function; otherwise, there is but a mechanical juxtaposition that is not patentable. In this import, plaintiff's feeding device does not coact with his means of opening, moistening, and sealing the envelopes. Each continues to do its old work in the old way. It may be observed in conclusion that there was no testimony as to how plaintiff's machine was accepted in the market. The proofs were confined to paper patents aided by some models.

The decree is reversed, and the cause is remanded, with direction to dismiss the petition.