## SKINNER BROS. BELTING CO. v. OIL WELL IMPROVEMENTS CO.

### No. 490.

Circuit Court of Appeals, Tenth Circuit.

Dec. 24, 1931.

time prevent oil from escaping at the mouth of the well.

The validity of the patents, and the range of equivalency accorded them, depends in part upon the prior art. The prior art is sketchy, and, at the time the inventor entered the field, it was not crowded. The merit of these devices was almost immediately recognized by the industry, and very shortly their use became general. These patents were issued in 1916 and 1918, respectively, and it is a fair deduction from the record that considerable capital has been invested on the faith of the grants. Under such circumstances, the defendant must show some clear reason why these grants from the government should be set aside, and the defendant permitted to appropriate the ideas of the inventor. We are of the opinion that the defendant has not met the burden, and that the decree of the trial court was right.

When oil wells are being drilled or swabbed, it is necessary to prevent the escape of oil out of the top of the casing, both to save the oil and to prevent fires. In both operations the wire drilling cable must be free to operate. The earliest device was crude; a sleeve attached to the drilling cable which operated through packing in a stuffing box. But this was not satisfactory, for the reason that when the tools had to be pulled out of the well, the sleeve had to be taken off the cable, or so loosened that it would not prevent the escape of the oil. In 1902, Rigby invented and patented an oil saver (696,747) which in some respects was more satisfactory. To avoid the necessity of a sleeve on the cable, he proposed a device which was clamped to and closed the casing head, save for a slot through which the cable was free to operate. His device was constructed in two equal parts, each semicircular in form, so that it could be taken off the cable, and thus avoid the necessity of threading the cable through it. The cable operated through a stuffing box in which were rubber rings; these rings were compressed vertically by means of a large screw, operated by handles, which was at the top of the device and which likewise was split to encircle the cable. This device avoided some of the troubles of the old "barrel oil saver," but ran into others. The drilling cable was operated by a walking beam; consequently, as the cable worked up and down, it swayed sideways; the result was a constant wear against the sides of the compressing screw; this caused the screw to work loose which required almost continuous adjustment. Again, the vertical compression of the packing re-

Joe T. Dewberry, of Tulsa, Okl. (G. W. Earnshaw, of Joplin, Mo., on the brief), for appellant.

Gilbert P. Ritter, of Washington, D. C. (John A. Haver, of Tulsa, Okl., Ritter, Mechlin & O'Neill, of Washington, D. C., and Randolph, Haver, Shirk & Bridges, of Tulsa, Okl., on the brief), for appellee.

Before COTTERAL and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

The defendant appeals from a decree adjudging claims 1 and 2 of patent to Heggem, 1,175,261, and claims 1, 2, 3, 4, and 12, of Heggem patent 1,256,899 valid and infringed. Both patents involve a device for sealing a drilling oil well so that the drilling cable may operate through the device and at the same

duced the bearing surface against the cable and lessened its efficiency. Rigby was better for swabbing, and more convenient when tools must be lowered or lifted; but the old barrel saver was better for day by day drilling.

Although some such device was necessary in the oil business, a satisfactory oil saver had not been devised when Heggem entered the field. There were at least three angles to the problem: (a) Side sway must be controlled; (b) The device must be capable of assembly without cutting or threading the cable; (c) means of keeping the packing snug against the cable must be provided for. Heggem's first patent, claim 1 of which is in the margin,[1] accomplished these ends. He did away with the top compression screw of Rigby, and provided for semilateral means of adjusting the packing. He then took from other arts rotatable guide spools and placed them on top of the device, where Rigby's compression screw was. These guide spools fed the cable into the stuffing box evenly, and avoided the wear incident to side sway. He availed himself of the separable sections of Rigby.

■ Is this a patentable combination? It is said that all of the elements are old; this is true, but immaterial. Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U. S. 301, 29 S. Ct. 495, 53 L. Ed. 805; Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68. In that text-book of patent law, National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. (C. C. A. 8) 106 F. 693, 706, Judge Sanborn lays down the rule: "A new combination of old elements, whereby a new and useful result is produced, or an old result is attained in a more facile, economical, and efficient way, may be protected by patent as securely as a new machine or composition of matter. Seymour v. Osborne, 11 Wall. 516, 542, 548, 20 L. Ed. 33; Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39."

■ The patent in suit meets this test. It is said that no inventive genius, but only mechanical ingenuity, was needed to think of this device. No formula has been prescribed which affords a solution of the vexed question, Has inventive genius been exercised? We know that the simplicity of the device does not belie inventive genius. Hughes Tool Co.

v. International Supply Co. (C. C. A. 10) 47 F.(2d) 490, 492, and cases there cited. We know that we should try to eliminate "hindsight"; we know that the fact that the problem existed, that financial reward awaited a solution, and that no one did think of it, is strong evidence of invention. We know a presumption of invention arises from the issuance of the patent, and that commercial success strengthens that presumption. Considering these things, we are not prepared to say that this device, simple though it is, does not disclose inventive genius.

■ It is said that it is an aggregation and not a combination; that the guide spools operate in the same way that they have always operated; and so of the other elements. This is true, but not fatal, for it is not necessary to a valid combination that one element shall affect the quality of the work done by another. It is said that the elements are but hitched together, and therefore are not patentable. Nor is this the test. The test is whether the combination discloses a co-operation or a co-ordination of the elements which, working together as a unit, although mayhap not simultaneously, produces a new or better result. The distinction between combination and aggregation is one difficult to put in words that really define; it has been the subject of much legal literature which we find it unnecessary to review. Walker (6th Ed.) §§ 70, 71, deals with it at length. Justice Matthews drew an analogy from real estate law; joint tenants the combination, tenants in common the aggregation. Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749. Judge Hook compared an aggregation to "successive changes of horses in a coach journey from London to Bath. Those out of London, their task done, dropped their burden at Maidenhead; others picked it up there, and carried it to Newbury; and so on to destination." Moore v. Saunders (C. C. A. 8) 247 F. 314, 317. Following his analogy, four horses hitched to a coach would be a combination. Where definitions are abstract, there is a natural disposition to resort to analogy. A rough analogy, that cannot be pressed too far, has repeatedly occurred to me in considering this question. I think of a football team as a combination; one passes, one receives, another blocks, another runs, and still others hold the line. Eleven men are doing different things, each in his own way, and not always simultaneously; yet they are working to a common end, to advance the ball; and they coact as a unit. I think of a track team as an

[1] The combination with a stuffing box comprising longitudinally separable sections having alined openings for the passage of a reciprocating element, of a plurality of rotatable guide spools arranged on opposite sections of the box and on opposite sides of the axis of the alined openings of the stuffing box and adapted to contact with a reciprocating element passing through the stuffing box.

aggregation; one runs, another hurdles, another jumps, another throws. They all work for a common general end, to amass points for their alma mater; but there is lacking the vital spark of co-operation or co-ordination. They work, not as one unit, but as several. In the case at bar, we have no doubt that the device is a combination and not an aggregation. A single object is to be accomplished; to prevent escape of the oil from the well. All the elements co-ordinate in working to that end. It is not a relay of horses from London to Bath; it is a three-horse hitch to the same coach. We conclude that the first patent is valid.

■ The second patent concerns itself with a particular sort of packing to be used in the stuffing box, and packing followers, and means for the adjustment thereof. Nothing was claimed in the first patent as to the packing to be used in the device; the specifications referring to "any suitable packing material; but rubber, fibre, hard oil, * ʃ * may be here mentioned as well adapted for the purpose." The second patent describes the combination of the first, but in claim 3 adds "a plurality of packing followers also arranged in opposite sections and on opposite sides of the alined openings of the stuffing box, and means for adjustably advancing said followers toward the axis of the alined openings"; and in claim 4 adds to the followers "a flexible packing comprised of longitudinally separate sections" and a means of "independently" adjusting the followers described in claim 3; claims 1 and 2 describe the packing as "having transverse grooves."

It is claimed the second patent is void because of the rule that prevents an extension of the monopoly by a second patent on the same device. But the first patent claims nothing as to packing or packing followers or means of adjustment; the second patent covers only these features, although their setting, the stuffing box, is claimed. When the first patent expires, the world can use the device there claimed, except in combination with the improvements claimed in the second patent. The second patent is the usual improvement patent. The packing element is an important feature of oil savers. Wire cables have interstices between the strands; the packing material must close the interstices without checking the movement of the cable; rubber is elastic, but not readily compressible; the grooves in the rubber packer make it so compressible that the rubber will insinuate itself between the strands; the rubbers wear out

rapidly, and means for ready and independent adjustment saves time and money. It makes no difference that the inventor holds a prior patent on the device so improved. We think the claims of the second patent disclose patentable improvements, and are valid.

■ Counsel for defendant contends that both patents are "void because indefinite and vague and because of the omission from each of the various claims of essential elements of the claimed combination." This contention is not entirely clear. If he means that the device lacks utility, the record is to the contrary. If he means that the patentee might have claimed more than he did, it is the misfortune of the patentee, but not fatal to that which is claimed. If he means that each claim must set out every detail of every other claim and the specifications, he is in error. If he means that reference must be had to the specifications and drawings to get a clear understanding of the claims, he is right; that is what specifications and drawings are for. If he means that, so read, they are vague, uncertain, and not understandable, we disagree.

■ This brings us to the question of infringement. The defendant made and sold the "Economy" oil saver prior to 1927, but desisted upon notice of infringement. Thereafter it made and sold the "Pierce" oil saver. The "Pierce" saver is not as close a copy as the "Economy," but both are designed to and do the same work as the plaintiff's and in the same way. There are differences in detail of construction, but defendant has combined the rotatable guide spools, the longitudinally separable stuffing box, the alined openings for the cable, and the adjustable, flexible, and compressible packer. The plaintiff severs his stuffing box in equal parts, the defendant in unequal parts; but the severance in each case is to permit the device to be assembled on the wire cable. The plaintiff constructs its flexible packer with grooves to allow for compression; the defendant honeycombs its flexible packer to allow for compression. The contention of defendant is that plaintiff's patents should be narrowly construed; even so, defendant infringes, for every valid patent is entitled to some range of equivalents, and the differences between plaintiff's patents and defendant's devices are colorable and not substantial. But we see no reason to hold plaintiff to a particularly narrow range of equivalents. The range of equivalents to be accorded a patent depends upon whether the patent is a pioneer or an improvement; if for an improvement, it depends upon wheth-

er the improvement marks a long step forward or but a short one; whether the patent discloses much or little inventive genius. Eibel Process Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. Heggem's device, as improved, marked a long step forward in the art of sealing oil wells, and we think his patents are entitled to a reasonably liberal range of equivalents. We hold that both of defendant's devices, the Economy and the Pierce, infringe.

Complaint is made because the trial court permitted, at the trial, an amendment to the bill including claims 1 and 2 of the second patent. These claims cover the "transverse grooves" in the packer. Prior to the trial, plaintiff had examined defendant's packer; it appeared to be solid rubber, and not to infringe these claims. At the trial, it was discovered that the apparently solid rubber was in fact honeycombed and did infringe. Thereupon, and at the outset of the trial, plaintiff asked to amend; the trial court reserved a ruling, but admitted evidence on both sides on the point. At the close of the trial, the amendment was allowed, the trial court offering the defendant additional time in which to present testimony as to these claims. The defendant had already introduced its evidence on the point, and declined the offer of additional time. The trial court was entirely right in permitting the amendment; it is amply justified by equity rule 19 (28 USCA § 723); it saved another suit, and injured no one.

The decree is in all respects affirmed.