## GRAY v. TEXAS CO.
### No. 10008.

Circuit Court of Appeals, Eighth Circuit.

Feb. 7, 1935.

Leonard L. Kalish, of Philadelphia, Pa. (Thompson, Hessian & Fletcher and Maurice A. Hessian, all of Minneapolis, Minn., on the brief), for appellant.

Lynn A. Williams, of Chicago, Ill. (Orren E. Safford, of Minneapolis, Minn., Casper William Ooms and Williams, Bradbury, McCaleb & Hinkle, all of Chicago, Ill., and Shaw, Safford and Putnam, of Minneapolis, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment dismissing a complaint after demurrer had been sustained thereto.

The suit was an action at law for damages for infringement by defendant-appellee of United States Patent No. 1,810,826 granted to plaintiff-appellant and covering a "Grease Service Rack."

The demurrer was based upon several grounds and was sustained generally; but the only ground relied upon by appellee in this court is as follows: "The patent which is the subject matter of the action and which is made a part of the complaint, is void upon its face because * * * it describes and claims a mere aggregation as distinguished from a true combination."

The object of the alleged invention is thus set out in the specifications: "It is the object of my present invention to provide means whereby a series of generally similar grease dispensing pumps or grease guns, each containing a different specialized lubricant or other fluid required in the servicing of the automobile, may be arranged and kept at hand so that they may be used with the greatest facility, and so that the danger of confusion of the various lubricants is reduced to a minimum. Thus, it is an object of my invention to reduce to a minimum the possibility of applying to any part of the automobile requiring specialized lubrication or requiring some fluid for specialized servicing, any fluid or lubricant other than the appropriate fluid or lubricant required for the particular part, and at the same time to facilitate the quick and easy selection of the required lubricant or other fluid."

The first claim of the patent may be taken as typical. It reads as follows: "A specialized lubricating service rack including a series of pump supports, for receiving a series of pumps containing different fluids, a corresponding series of dispensing pumps mounted upon said supports, a series of indicia upon said rack in juxtaposition to said series of pump supports, respectively, each indicating a particular part of the automobile requiring a specialized lubrication or service and a series of identification marks upon said pumps, and a corresponding series of identification marks upon said rack in juxtaposition to said pump supports, for identifying each with its particular support and hence with the particular legend denoting the part of the automobile to which said pump is properly applicable."

The service rack includes the following elements: (a) A series of pump supports; (b) a corresponding series of dispensing pumps; (c) a series of indicia upon the rack, close to the supports, each mentioning a particular part of the automobile requiring specialized lubrication; (d) a series of identification marks upon the pumps; (e) a corresponding series of identification marks upon the rack near the supports for identifying each pump with its particular support.

1. It is apparent that the claim is what is generally known as a combination claim. The real question at issue is whether the combination of elements disclosed by the patent is a "mere aggregation" not subject to patent, or is a "true combination" subject to patent within the provisions of the patent laws; in other words, a patentable combination.

A brief review of some of the pertinent authorities will be helpful.

Hailes v. Van Wormer, 20 Wall. 353, 354, 22 L. Ed. 241, involved "improvement in coal stoves" consisting of a combination of old devices. The court in its opinion said (page 368 of 20 Wall.): "It must be conceded that a new combination, if it produces new and useful results, is pat-

entable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention."

Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719, involved one of the lead pencil cases. The court in its opinion said (page 357 of 92 U. S.): "The combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes, from that given by their separate parts. There must be a new result produced by their union: if not so, it is only an aggregation of separate elements. An instance and an illustration are found in the discovery, that, by the use of sulphur mixed with india-rubber, the rubber could be vulcanized, and that without this agent the rubber could not be vulcanized. The combination of the two produced a result or an article entirely different from that before in use. Another illustration may be found in the frame in a saw-mill which advances the log regularly to meet the saw, and the saw which saws the log; the two co-operate and are simultaneous in their joint action of sawing through the whole log: or in the sewing-machine, where one part advances the cloth, and another part forms the stitches, the action being simultaneous in carrying on a continuous sewing. A stem-winding watch-key is another instance. The office of the stem is to hold the watch, or hang the chain to the watch: the office of the key is to wind it. When the stem is made the key, the joint duty of holding the chain and winding the watch is performed by the same instrument. A double effect is produced or a double duty performed by the combined result. In these and numerous like cases the parts co-operate in producing the final effect, sometimes simultaneously, sometimes successively. The result comes from the combined effect of the several parts, not simply from the separate action of each, and is, therefore, patentable."

Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749, involved an improvement in the manufacture of moulding crucibles and pots used in the manufacture of steel. The court in its opinion said (page 318 of 104 U. S.): "* * * It is perfectly clear that all the elements of the combination are old, and that each operates only in the old way. Beyond the separate and well-known results produced by them severally, no one of them contributes to the combined result any new feature; no one of them adds to the combination anything more than its separate independent effect; no one of them gives any additional efficiency to the others, or changes in any way the mode or result of its action. In a patentable combination of old elements, all the constituents must so enter into it as that each qualifies every other; to draw an illustration from another branch of the law, they must be joint tenants of the domain of the invention, seised each of every part, per my et per tout, and not mere tenants in common, with separate interests and estates. It must form either a new machine of a distinct character and function, or produce a result due to the joint and co-operating action of all the elements, and which is not the mere adding together of separate contributions. Otherwise it is only a mechanical juxtaposition, and not a vital union."

Richards v. Chase Elevator Co., 158 U. S. 299, 15 S. Ct. 831, 39 L. Ed. 991, involved an improvement in a grain transferring apparatus. The court in its opinion said (page 302 of 158 U. S., 15 S. Ct. 831, 833): "Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements. Indeed, the multiplicity of elements may go on indefinitely without creating a patentable combination, unless by their collocation a new result be produced."

Grinnell Washing Mach. Co. v. E. E. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196, involved improvements in washing machines. The court in its opinion said (page 432 of 247 U. S., 38 S. Ct. 547, 549): "It is not always easy to decide this question, as the difference of opinion in the Circuit Courts of Appeals in this case illustrates. Generally speaking, a combination of old elements in order to be patentable must produce by their joint action a novel and useful result, or an old result in a more advantageous way. To arrive at

the distinctions between combinations and aggregations definite reference must be had to the decisions of this court."

The court reviews the cases above cited and then proceeds (page 433 of 247 U. S., 38 S. Ct. 547, 550):

"Applying the rule thus authoritatively settled by this court, we think no invention is shown in assembling these old elements for the purposes declared. No new function is 'evolved from this combination'; the new result, so far as one is achieved, is only that which arises from the well-known operation of each one of the elements.

"* * * So in this instance we think the combination accomplished by Phillips fails to show that exercise of invention, producing a novel and useful result from the co-operating action of the elements, which is essential to distinguish patentable combination from an aggregation of old elements so placed by mechanical skill as to do work more rapidly and economically."

In American Chocolate Machinery Co. v. Helmstetter (C. C. A.) 142 F. 978, page 980, the court stated the distinction between a patentable combination and a mere aggregation thus: "The distinction between a combination and an aggregation lies in the presence or absence of mutuality of action. To constitute a combination it is essential that there should be some joint operation performed by its elements, producing a result due to their joint and co-operating action, while in an aggregation there is a mere adding together of separate contributions, each operating independently of the other."

The distinction was quoted with approval by this court in Portland Gold Mining Co. v. Hermann, 160 F. 91, 100.

Moore v. Saunders, 247 F. 314 (C. C. A. 8), involved a patent for improvements in envelope sealing machines. The device was made up of a combination of old elements. The court, in holding the patent void, said (page 317 of 247 F.): "There must be a coaction between them [the elements], and not a mere hitching up of separate contributions, each one of which continues independently to perform its customary function; otherwise, there is but a mechanical juxtaposition that is not patentable."

The court also said (page 317 of 247 F.): "To be sure the new assemblage accomplishes as an entirety more than either

old element did in separate operation, and in a way the elements were, as was said below, 'successively co-operative.' But the co-operation was like that of the successive changes of horses in a coach journey from London to Bath. Those out of London, their task done, dropped their burden at Maidenhead; others picked it up there, and carried it to Newbury; and so on to destination. There was, of course, a 'successive co-operation'; but in the sense of the patent law a patentable combination of old elements means more than that."

Skinner Bros. Belting Co. v. Oil Well Improvements Co. (C. C. A.) 54 F.(2d) 896, involved a packing used in a device to prevent the escape of oil at the mouth of a drilling well. The Circuit Court of Appeals of the Tenth Circuit, speaking by Judge McDermott, stated the test thus [page 898 of 54 F.(2d)]: "The test is whether the combination discloses a co-operation or a co-ordination of the elements which, working together as a unit, although mayhap not simultaneously, produces a new or better result."

Judge McDermott used an illustrative analogy which is perhaps better than that of the successive changes of horses in a coach journey from London to Bath. He said [page 898 of 54 F.(2d)]: "A rough analogy, that cannot be pressed too far, has repeatedly occurred to me in considering this question. I think of a football team as a combination; one passes, one receives, another blocks, another runs, and still others hold the line. Eleven men are doing different things, each in his own way, and not always simultaneously; yet they are working to a common end, to advance the ball; and they coact as a unit. I think of a track team as an aggregation; one runs, another hurdles, another jumps, another throws. They all work for a common general end, to amass points for their alma mater; but there is lacking the vital spark of co-operation or co-ordination. They work, not as one unit, but as several."

The same court, speaking by Judge Phillips, in the case of Independent Oil Well Cementing Co. v. Halliburton, 54 F.(2d) 900, page 905, states the rules thus:

"When the respective individual functions of the elements assembled are not changed and where they produce no result other then the added results of such functions, there is a mere aggregation of elements. * * *

"When the elements are so united that by their reciprocal influence upon each other, or by their joint action on a common objective, they perform additional functions and accomplish additional results, the union is a true combination. * * *

"The result must be due to the joint and co-operative action of all the elements, not a mere aggregation of the several results of the separate elements acting independently."

To the same effect are the cases of Beecher Mfg. Co. v. Atwater Mfg. Co., 114 U. S. 523, 5 S. Ct. 1007, 29 L. Ed. 232; Brinkerhoff v. Aloe, 146 U. S. 515, 13 S. Ct. 221, 36 L. Ed. 1068; Palmer v. Village of Corning, 156 U. S. 342, 15 S. Ct. 381, 39 L. Ed. 445; Office Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U. S. 492, 19 S. Ct. 641, 43 L. Ed. 1058; John E. Thropp's Sons' Co. v. Seiberling, 264 U. S. 320, 44 S. Ct. 346, 68 L. Ed. 708; Powers-Kennedy Co. v. Concrete Co., 282 U. S. 175, 51 S. Ct. 95, 75 L. Ed. 278; DeLore v. St. Louis Lithopone Co., 26 F.(2d) 864 (C. C. A. 8), and many others which might be cited.

In numerous cases, marks or indicia for assistance and identification have been held not to constitute patentable combinations. Excella Pattern Co. v. McCall Co. (C. C. A.) 5 F.(2d) 61, 62, involving identifying means relative to garment patterns, is an example. In that case the court said: "But, with it all, it has occurred to all industries, and in nearly every practice of life, to mark for assistance and identification two things which are liable to be confused, giving the name, number, or some identifying provision. Court records, lawyers' papers, manufacturers, and, indeed, men in everyday affairs of life, avoid confusion by so doing. The courts, in testing the validity of inventions, have fully recognized this."

To the same effect are the cases of In re Meinecke (Cust. & Pat. App.) 44 F.(2d) 674; Hotel Security Checking Co. v. Lorraine Co. (C. C. A.) 160 F. 467, 24 L. R. A. (N. S.) 665; Hocke v. N. Y. Cent. & H. R. R. Co. (C. C.) 117 F. 320.

In the light of the teachings of the foregoing authorities, let us examine the patent in the case at bar.

There is no contention that there is co-action between the various subelements that go to make up the elements set out in the claim, e. g., coaction between the support and the grease pump, or between the grease pump and the legend on the grease rack.

The gist of the invention, if there be invention, is to be found, as stated by counsel for plaintiff, in the "relationship between a *series* of similar grease-guns, a common rack or holder or support which will hold them all, and car-part indicia adjacent the holders or supports, and markings on the grease-guns and on the holders or supports." (Italics supplied.) Indeed, each claim sets out as the distinguishing feature the relationship between a *series* of supports, a *series* of grease guns, a *series* of legends, etc.

Multiplicity of unitary elements, however, does not of itself result in invention. There must be something added to the multiplicity in the way of special arrangement or allocation resulting in coaction between the unitary elements before there can be said to be invention.

But there is no special arrangement or allocation of the unitary elements claimed here. No. 1 grease gun with its support and its accompanying indicia might just as well be No. 8. There is no particular value in the arrangement. Nor is there any coaction between the unitary elements. Drop out any of the grease guns with their supports and accompanying indicia and the other grease guns with their supports and indicia will operate and furnish information as before.

There is no co-operative work; each unitary element performs its own work and neither affects, nor is affected by any other unitary element.

The plaintiff's device is simply another illustration of the use of indicia as an aid in selecting articles that might be subject to confusion. The carpenter's cabinet for augur bits, the druggist's medicine cabinet, the hotel keeper's rack for room keys are other examples.

The calling of the device an "educational appliance" does not endow it with patentability.

2. But plaintiff contends that the question of patentability cannot be determined upon demurrer, but only after a trial involving a hearing upon the facts which may be produced.

That a patent case may be disposed of on demurrer if the circumstances warrant such disposal is well settled. In Richards v. Chase Elevator Co., supra, the court said (page 301 of 158 U. S., 15 S. Ct. 831, 832): "While patent cases are usually disposed of upon bill, answer, and proof, there is no

objection, if the patent be manifestly invalid upon its face, to the point being raised on demurrer, and the case being determined upon the issue so formed." See, also, Brown v. Piper, 91 U. S. 37, 44, 23 L. Ed. 200; Slawson v. Grand Street, P. P. & F. R. R. Co., 107 U. S. 649, 2 S. Ct. 663, 27 L. Ed. 576; Risdon Iron & Locomotive Works v. Medart, 158 U. S. 68, 84, 15 S. Ct. 745, 39 L. Ed. 899.

This court, in Luten v. Kansas City Bridge Co., 285 F. 840, page 844, has stated the rule thus: "Want of invention or patentability may be adjudged on motion or demurrer, but only in exceptional cases, where the question is absolutely free from doubt. Ordinarily a patent should not be defeated without hearing upon proofs."

In the earlier case of Mahler v. Animarium Co., 111 F. 530, page 531, this court had stated the rule thus: "As the case below passed off on demurrer, no testimony having been heard, in determining whether patent No. 587,237 is valid we are at liberty to consider only the allegations of the bill and the specification and claim of that patent. We are at liberty, however, to examine the patent and determine whether it is valid in the light of that common knowledge of facts and principles which is possessed by all persons of average intelligence." See, also, Jackes-Evans Mfg. Co. v. Hemp & Co., 140 F. 254 (C. C. A. 8).

Other Circuits are in accord. Friend v. Burnham & Morrill Co., 55 F.(2d) 150 (C. C. A. 1); American Fibre-Chamois Co. v. Buckskin-Fibre Co., 72 F. 508 (C. C. A. 6); Alexander v. De Moulin Bros. & Co., 199 F. 145 (C. C. A. 7); Towne Steering Wheel Co. v. Lee, 199 F. 777 (C. C. A. 9).

In Lange v. McGuin, 177 F. 219, page 222 (C. C. A. 7), the court stated the rule as follows: "If concededly old elements are brought together, not in the co-operative union of a true combination, but in the forced relationship of a mere aggregation, a patent therefore is void, because a patent cannot lawfully be issued for an aggregation."

In the case at bar, the device of plaintiff is not complex; the specifications of the patent are plain; the claims are easily understood. The complaint, the patent, the fund of "common knowledge of facts and principles which is possessed by all persons of average intelligence" was before the trial court upon the demurrer. It, of course, took judicial notice of the statutes relating to patents.

The same information is before this court. We hold that plaintiff's patent was void on the ground presented to this court, which was one of the grounds presented to the trial court.

We think that the judgment of the trial court was right, and it is, accordingly, affirmed.