**WALTER KIDDE & CO., Inc., v.
UNITED STATES.**

No. 42620.

Court of Claims.

Oct. 6, 1941.

John S. Bradley, of New York City, for plaintiff.

Titian W. Johnson, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen. (T. Hayward Brown, of Washington, D. C., of counsel), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, JONES, and MADDEN, Judges.

MADDEN, Judge.

Plaintiff claims that the defendant infringed patents owned by plaintiff, when in 1933 the defendant contracted with Air Cruisers, Inc., for the manufacture and delivery of 2,000 gas pressure cartridges to be used for inflating vests to be worn by aviators as life preservers, and later accepted delivery of and paid for the cartridges.

The patents claimed to be infringed are the Mapes patent, granted to Daniel Mapes July 18, 1933, and the Heigis patent, granted to Henry Heigis July 25, 1933. Mapes and Heigis each had after application, and before granting of his respective patent, assigned his application to plaintiff. The defendant had express notice from plaintiff of plaintiff's claim of infringement at the time the defendant accepted and paid for the cartridges between December 3, 1933, and April 25, 1934.

The gas pressure cartridges were about four inches long and one inch in diameter and so constructed as to be able to confine $CO_2$ gas under a pressure of many hundred pounds per square inch, and when needed, to release it under control, but within four seconds, into an aviator's vest through a manifold, thus inflating the vest and converting it into a life preserver against the perils of water.

The cartridges as manufactured by Air Cruisers, Inc., and bought by the defendant, used the devices claimed in plaintiff's patents, and therefore infringed them if they are valid patents. The defendant claims that the patents are not valid, that they did not involve invention, but only mechanical improvement of devices earlier patented or earlier used. It claims that some fifteen United States patents and two British patents, by their disclosures, anticipate the claims of plaintiff's patents.

The usefulness of a device whereby gas could be confined under great pressure and quickly released had been formerly almost entirely in connection with fire extinguishers to be operated by hand. These extinguishers follow the same general plan. There is an outside container some eight inches in diameter and three feet long to hold a liquid containing ingredients having fire extinguishing properties. Inside this large container is placed a small flask of sufficiently heavy construction to confine a gas under great pressure. The neck of the flask has placed in it by some means a thin metal disc, a small part of the surface of the disc being exposed to the pressure of the gas in the flask. The operation of the extinguisher in the case of fire calls for the puncturing of the disc in order to release the gas from the flask and thereby put the extinguishing liquid which is in the outside vessel under pressure so as to propel it through the attached small hose with enough force so that it can be played upon the fire.

The puncture is made in the diaphragm in the neck of the flask by some sort of punch. This punch may be forced toward the diaphragm by a blow on the other end of the punch, or the punch may be stationary and the flask movable along guides so that when the end of the extinguisher where the punch is, is jounced against a solid object, the flask will move to the punch and the diaphragm will be punctured.

It is desirable that the gas flow steadily and not too rapidly from the inside flask into the outside container so that the extinguisher may be sure to operate and may be played upon the fire for as long as possible. This requires that the hole through the diaphragm into the gas flask be small, but that the passage for the gas be an unobstructed one of a predetermined size.

Since the necessary mechanism in the neck of the gas flask may be somewhat complicated and since the parts are small and delicate, it is desirable that they be not exposed to the possible corroding and

clogging which might occur if they were open either to the extinguishing liquid in the external container, or to the outside air and dust. Such exposure may be avoided by having another diaphragm of thin frangible material, such as bakelite, not constructed to withstand any substantial pressure, but only to be air and liquid tight, so placed in the neck of the flask that it will keep liquid, air, or dust, from the puncturing and controlling mechanism. This second diaphragm also serves the purpose of showing, when it is visible and intact, that the gas has not escaped from the flask.

To prevent any obstruction of the small passage through which the gas must escape from the flask a fine meshed screen, so placed inside the flask as to strain the gas before it enters the passage, is desirable.

Air Cruisers, Inc., in manufacturing the safety vest cartridges whose purchase and use by the defendant constitute the alleged infringement, used a frangible diaphragm of bakelite to prevent outside air or dust from coming into contact with the mechanism of the cartridge until the gas should be released, a thin metal disc sufficient to confine the compressed gas, but puncturable, a hollow punch with a chamfered or slanted end, intended both to puncture the confining disc and to serve as a passage for the escaping gas, the hollow punch moving inside a close fitting passage and held from unintended contact with the disc by a coil spring through which its flanged head would not pass, a ring above the punch which prevented the punch from being blown out of the passage by the escaping gas after the punch has been operated, and a screen to strain any particles from the gas before it entered the small passage through the hollow tube.

Plaintiff claims that the combination of these devices so as to produce a controlled and dependable flow of gas was an infringement of the Mapes patent and that the use of the easily frangible bakelite diaphragm to keep air and dust from the mechanism and to indicate whether gas had escaped was an infringement of the Heigis patent.

In the vest inflation equipment manufactured for the defendant, the device to bring force to bear upon the puncturing pin was located in the manifold and was operated by a lever. It is not claimed as an infringement in this suit.

We think that neither the Mapes nor the Heigis patent was valid as to the element here claimed to have been infringed.

Plaintiff relies principally as to the Mapes patent upon the control exercised by a device manufactured according to its specifications, over the flow of the compressed gas from the flask. This is accomplished by the screen which prevents solid particles which might clog the small outlet from reaching it; by the hollow puncturing instrument fitting closely in the passage through which it moves, so that the only outlet, assuming perfection in manufacture, is through the tube and the rate of escape is determined by the size of the hole through the tube and the amount of pressure the gas is under, and by the fact that the hollow puncturing instrument cannot be blown out of its passage by escaping gas since it has a flanged head which cannot move farther than the stop ring above it.

The idea of controlling the rate of escape of the gas is conceded by plaintiff not to be original. Thompson in his 1919 patent controlled escape by the size of the outlet port through which the gas had to pass before it reached the hole punched in the disc. Badger in his 1928 and 1929 patents controlled it by compelling the gas to pass through a groove in the side of the punch, the punch having a cutting end which cuts a clean, round hole through the disc, the groove on the punch commencing not at the end but still on the part of the punch which projects through the disc after it is punctured. The Johann patent of 1928 controlled the rate of escape by making the puncturing pin hollow at the puncturing end, with lateral outlets farther up the pin. Schworetzky in his 1928 British patent exercised control by means of a groove in the puncturing instrument, which has a circular cutting end. Badger and Thompson stated in their disclosures what would have been obvious without stating, that their devices were intended to control the escape of gas. Johann's device was in this respect identical with plaintiff's except that the gas after passing into the hollow end of the puncturing pin was allowed to escape through lateral holes instead of passing through the whole length of a hollow pin. This difference, not serving any original purpose, is not invention.

Coleman's 1906 patent, and the Marks and Clerk British patent of 1925, used a

screen to keep particles of solid material from clogging the outlet of the pressure flask.

The device of a coil spring to keep the point of the puncturing pin from unintended contact with the disc was used in the Read 1914 patent.

In the Badger patents the puncturing pin was kept from being blown out of the hole by a latch. In the Read 1914 patent the pin is stopped by a depression in the cam. In the Mapes patent this is accomplished by having a flange or head on the pin, which cannot pass a ring screwed into the apparatus above it. We do not think that this stopping device constitutes invention.

The only additional element claimed in the Heigis patent beyond the claims of the Mapes patent, is the external sealing disc which serves to prevent outside air or liquid from coming in contact with and corroding or clogging the delicate mechanism for puncturing the flask and controlling the escape of the gas and also serves, when visible, as an indicator of whether gas has escaped or been released from the flask.

The 1930 patent to Schworetzky has a diaphragm "protecting the opening mechanism of the bottle," from outside contact and driven in when the puncturing pin is struck. The 1928 patent to Schworetzky has the flask covered with a cap of "easily deformable" material which is driven in when the punch is driven in, and is ruptured by the gas pressure when the punch passes through the disc. Both these Schworetzky devices serve the same purposes as the Heigis external seal, and in the same way; they seal off the operating parts of the flask mechanism, and if intact, indicate, if they are visible, that the gas is still in the flask. If used in a fire extinguisher neither they nor the Heigis device would be visible unless the outside shell of the extinguisher was opened. In the vest inflating apparatus all three would be visible until the cartridge was attached to the manifold.

Plaintiff's claim that it has, without using any new elements, combined old elements "into a new combination which work, and are bound to work, as intended" is not fortified by proof that the apparatus covered by prior patents intended to accomplish the same purposes did not work. Plaintiff's mechanical design seems to be excellent but plaintiff has not proved, as the patentee did in the cases plaintiff relies on, Webster Loom Company v. Higgins, 105 U.S. 580, 26 L.Ed. 1177; Richmond Screw Anchor Co. v. United States, 61 Ct. Cl. 397; Id., 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303; Allgrunn v. United States, 67 Ct.Cl. 1; Harry F. Waite v. United States, 63 Ct.Cl. 438, that it has accomplished something which could not be done with the former devices. The words of Chief Justice (then Associate Justice) Stone, "An improvement to an apparatus or method, to be patentable, must be the result of invention, and not the mere exercise of the skill of the calling or an advance plainly indicated by the prior art," Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 458, 79 L.Ed. 1005, are applicable here.

We conclude that plaintiff's combination of elements did not constitute invention, and that its patents are therefore invalid. The petition will be dismissed. It is so ordered.

WHITAKER, Judge, took no part in the decision of this case.