SENCO PRODUCTS, INC., Plaintiff,

v.

FASTENER CORPORATION and Duo-Fast Co., Defendants.

No. 55 C 109.

United States District Court
N. D. Illinois, E. D.

Sept. 26, 1958.

2. 56 F.R.Civ.P. 28 U.S.C.

Allen & Allen, Stanley H. Foster and John W. Melville, Cincinnati, Ohio, and Schroeder, Hofgren, Brady & Wegner, William J. Stellman, and James R. Sweeney, Chicago, Ill., for the plaintiff.

Mason, Kolehmainen, Rathburn & Wyss, M. Hudson Rathburn, and Walther E. Wyss, Chicago, Ill., for the defendants.

CAMPBELL, District Judge.

Plaintiff, Senco Products, Inc., hereinafter referred to as "Senco" brings this action against Fastener Corporation and Duo-Fast Co. hereinafter referred to as "Fastener", charging infringement of two patents owned by it, Juilfs No. 2,671,214, hereinafter referred to as the '214 patent and Juilfs No. 2,687,522, hereinafter referred to as the '522 patent. These patents relate to staple drive mechanism and staple feed mechanism for portable pneumatic staplers and were issued March 9, 1954 and August 31, 1954, respectively.

Senco asks for judgment holding the two patents in suit valid and infringed by Fastener, praying also that Fastener be enjoined from further infringement and for an accounting.

Senco charges that Fastener stapler DW–5018 infringes the '214 patent and that Fastener stapler DWP–5018 infringes the '214 patent and the '522 patent. It relies upon claims 1, 7, 9, 12, 13, 14, 15 and 17 of the '214 patent and claims 2, 4, 5, 6, 7, 8, 9, 10, 11, 13, 16, 20, 22, 23, 24, 25, 26, 27, 28, 29 and 31 of the '522 patent.

Fastener has admitted infringing claims 9, 12, 13, 14, 15 and 17 of the '214 patent and claim 31 of the '522 patent. Fastener maintains that every claim in issue both of the '214 patent and of the '522 patent is invalid; that claims 1 and. 7 of the '214 patent even if valid, are not infringed by any of the accused devices and that none of the claims of the '522 patent except claim 31 if valid is infringed by the accused devices.

The operation of the '214 patent as indicated in figs. 2 and 8 of the patent is as follows:

The tool being portable is grasped by a handle 17 to which is attached an air tube 19 through which compressed air is

admitted through the upper chamber in the handle into the cylinder 1. This compressed air is controlled by the operator by means of the trigger 55. Inside the cylinder 1 there is a piston 3 which slides up and down under the influence of the air and a return spring. Nestled up into the recess in the lower face of the piston 3 there is a rod 5 which is surrounded by a helical spring. Attached to the rod 5 is the driver 9 which form one piece known as the driver. The piston 3 and the driver are not connected but are in two pieces.

The spring resists the motion of both the piston and the driver on the outward stroke under the influence of the compressed air and returns the tool back to the initial position when the operator releases the trigger 55 permitting the air to escape so that there is no more push on the piston. As the piston comes down, any air ahead of it is exhausted through the hole 1'. When the piston has passed beyond that hole, then the air will no longer be exhausted but will build up a back pressure and tend to slow the piston down. The piston is finally stopped by a resilient piece of material 21.

In the meantime, the driver has accumulated a certain kinetic force and since it is not attached to the piston, it is permitted to run beyond the nose of the machine. The driver is stopped by its spring or by using up its energy or both. There is a curved magazine to hold the staples and an arm that urges them forward one by one where they are engaged by the driver and driven into the work.

■ Senco cites a decision by the Sixth Circuit Court of Appeals, Sasser v. Senco Products, Inc., 242 F.2d 565 upholding the validity and finding infringement of the patents here in suit. However, the validity of the patents in suit was conceded in that case and therefore, it offers nothing authoritative here. Murray-Ohio Manufacturing Co. v. E. C. Brown Co., 6 Cir., 124 F.2d 426, 428.

■ Senco also asserts that the validity of the patents in suit is further established by the fact that Bostitch, Inc. entered into a license agreement with Senco with regard to the patents. It appears from the evidence, however, that other patents were also involved in this agreement. Bostitch, therefore, for business or other reasons, might well have preferred to include the patents in suit in its licensing agreement rather than undergo additional annoyance and expense. Thropp's Sons Co. v. Seiberling, 264 U.S. 320, 329, 44 S.Ct. 346, 68 L.Ed. 708; Walker, Patents, p. 565.

■ Senco also asserts presumptions of validity arising from the granting of the patents in suit and from the successful Interference suit involving the '214 patent. These assertions, however, are greatly weakened by the fact that closely similar prior references, relied on by Fastener in this case, were not interposed or considered by the patent office in the prosecution of the applications or the Interference suit. Nordell v. International Filter Co., 7 Cir., 119 F.2d 948, 950; Benjamin Electric Manufacturing Co. v. Bright Light Reflector Co., Inc., 7 Cir., 111 F.2d 880; Walker, Patents, pp. 557, 558.

The basic essentials of stapling devices are seen in the Bradeen tacking machine No. 451,995, patented in 1891 which discloses in fig. 2 a portable tool with a handle 23, a cylinder e with a tube 1 for the admission of compressed air into the cylinder. Positioned in the cylinder to slide in it is a piston d to which is attached a piston rod c'. Extending from this rod and fixed to it is the driver c. In the lower end the driver traverses a narrow groove in which staples p are urged forward from a magazine Q into the groove that the driver traverses so that each staple will be pushed forward and driven into the work. Comparing this device to the '214 patent, it is seen that the basic differences are: 1) the driver and piston form one piece in the Bradeen patent and are separate in the '214 patent, with the driver fitting into a recess in the piston. 2) There is one stop for the piston and driver in the Bradeen patent while in the '214 patent separate stops are provided for each which allows the driver to advance due

to its inertia after the piston has been stopped.

Fastener has introduced into evidence prior art which demonstrates: 1) Separate pistons and drivers which pistons have recesses in which the driver is positioned; 2) Separate stops for pistons and drivers. Some of the prior art includes not only staple or nail driving devices but also "percussion tools" wherein the piston is accelerated rapidly while the driver remains motionless and when the piston has reached its maximum velocity it smashes the driver thus driving it into the workpiece. Senco maintains that these "percussion tools" are non-analogous and not pertinent as prior art. However, I feel that the principles involved in these devices are part of the basic essentials which form the field in which the patents in issue are members and therefore I consider them pertinent in gaining a complete understanding of the art.

In discussing the prior art which discloses separate pistons and drivers, I shall first consider stapling devices and then "percussion tools." The Randall patent No. 1,939,632 issued in 1933 discloses in fig. 3 a pneumatic portable stapling machine in which there is a main piston 5 and a floating piston 6, smaller in diameter than the cylinder, which is attached to the driver and which is capable of automatically centering itself to take care of the strains and stresses to which the driver 7 is subjected. The spring 8 serves as a slowing member but the buffer spring, that is, the heavy unnumbered spring serves to stop the device at the bottom. Here, though it can be said that the driver and piston are separate, the principal difference between the Bradeen patent and the '214 patent lies in the fact that the floating piston 6 and the driver 7 float laterally in order to accommodate misalignment and are not designed to move longitudinally. There are no separate stops provided for the piston and driver.

The Randall commercial gun in evidence as defendant's exhibit 32 is represented by drawings in defendant's exhibit 226. These drawings in fig. 5 and 6 describe a cylinder 1, a piston 3 and a driver 9 with an enlarged portion at the top which fits into a recess in the piston with a degree of clearance between the two. As the piston moves, it pushes the driver 9. When the piston stops on the cylinder 21, the driver is still free to move that small degree. This device though it has a recessed piston into which the driver fits, differs basically from the '214 patent in that there is a loose connection between the piston and driver which driver is stopped and returned by the piston instead of a spring as in the '214 patent. The Fastener Duo-Fast compression tacker of the CT–800 series in evidence as defendant's exhibit 220 likewise provides for a loosely connected driver blade and piston. Thus, in these stapling devices a recessed piston into which the driver may fit has been disclosed as well as unconnected or loosely connected pistons and drivers which allow the driver a degree of movement when the piston has been stopped.

Considering now percussion tools which have separate pistons and drivers, Von Vass No. 1,186,458 issued in 1916 discloses in fig. 3 a nailing device in which the staples are fed from a circular magazine 5. The driver 27 has a head 25. The piston 24 is fastened to a handle 23 and 20. A percussion effect is obtained by taking the handle 20 and raising it and lowering it so that it hits the driver 25 driving it down and inserting a staple. The driver is not attached to the piston and the member 21 stops the piston while the driver is restrained by the spring 26. This device, though operated manually, recognizes engine power and has a separate piston and driver with a separate stop for the piston and a spring stop for the driver as in the '214 patent.

The Stevens patent 2,101,159 issued in 1937 discloses in figs. 1 and 4 a pneumatic riveting gun. It has a piston 11 and a riveting member 12 with a shoulder 14. The riveting member 12 is stopped when the shoulder 14 contacts the spring 15. The piston 11 is stopped separately at the bottom of the cylinder.

Thus, though this device is a "percussion tool", it employs a separate piston and a separate driver with separate stops for each. This type of device is also seen in the Chicago pneumatic one-shot riveter in evidence as defendant's exhibit 67 (see right-hand central figure in defendant's exhibit 225) and in Clark patent No. 2,-241,184. Further evidence of separate pistons and drivers are found in the rock drill patents of Jackson, No. 798,416, Rice, No. 863,646, and Scott, No. 931,-964.

Fastener has also introduced prior art which discloses recessed pistons with a separate driver in the recess of which the Randall commercial gun (Defendant's exhibit 32) has already been discussed. The Oeckl patent No. 2,187,692 issued in 1940 describes in fig. 1 an automatic nail driving hammer operated by means of compressed air with a piston 25 which has a recess in it. There is a headed driver number 26 which is pushed by the piston with a degree of play between the two much as in the Randall commercial gun.

The Carmina patent No. 1,142,671 issued in 1915 discloses in fig. 2 a pneumatic hammer wherein the piston 33 has a recess 37. The driver shown in fig. 13 fits into the opening in the right hand side of the tool as shown in fig. 2 telescoping into the recess in the piston. The pin 40 fits into the slot 45 in the driver assisted by a spring 43. The shoulder 6 in the cylinder serves as a stop for the piston while the driver member, if it runs beyond this, is stopped by the pin 40 in the slot 45 of the driver. Though this percussion tool does not show a spring for returning the tool into position or a means for feeding staples into position, it does show a separate recessed piston and driver with separate means of stopping each.

The Duryea patent No. 1,063,666 issued in 1913 discloses in fig. 5 an internal combustion tool. The cylinder 42 contains a recessed piston which moves under the action of compressed air as it comes though the passage 36'. The rod 60 extends into the recess of the piston and is held there by the spring 35'. The head 58 of the rod is free in the piston. The shoulder 76 acts as a stop for the piston while the spring 35' stops the rod. Though this device is not used in staple driving, it does disclose a pneumatic tool with a recessed piston and separate piston rod with a return spring for the piston and piston rod as well as separate stops for each.

Further examples of recessed pistons with separate rods are seen in the Pardee patent No. 2,304,650 and the Hardypick British patent 547,814 which also discloses separate stops for the piston and rod.

As I view it the basis of the '214 patent is the division of the piston and driver into two parts with the driver fitting into a recess in the piston. They are accelerated simultaneously but a stop is provided to arrest the piston prior to the time the staple is driven completely home whereby the driver may advance due to its inertia to complete the setting of the staple. When this operation is considered in light of the basic teachings of the Bradeen patent and of the whole field of staple driving and percussion type tools, the familiarity is apparent. The operation bears the unmistakable stamp of improvement and development which is the result of mechanical skill only. Nowhere in the operation can I find the flash of creative genius which is necessary to constitute invention. Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 62 S. Ct. 37, 86 L.Ed. 58. The utility and commercial success of the '214 patent cannot create patentability where invention is lacking. Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. Therefore, I hold the '214 patent invalid for lack of invention.

The '522 patent in fig. 5 describes a handle 11 that the operator may grasp and press the trigger 37 which controls compressed air admitted into the handle at point 30. Inside the cylinder 13 there is a piston 14. The driver 17 is fixed to a head 16 which is nestled in the lower

recess of the piston. The cylinder is extended upward where there is another piston 52 and extending outward from the cylinder is another rod 55. The staples are fed from the magazine 12 at the bottom. The anvil 60 is pivotally mounted at 61 with arms 62. In figs. 2 and 3 it can be seen that rod 55 has from it a bail 66 the two arms of which as seen in fig. 3 are on each side of the nose of the gun. The lower arms of the bail 66 are attached to the arms 62 of the anvil, so that as the rod 55 goes up, the anvil will be raised. As seen in fig. 9, some pieces 68 are inserted between the anvil and the nose 47 and the operator by use of the trigger allows compressed air into the cylinder which pushes the piston 52 and the rod 55 upward pulling the anvil up against the work and nose. The piston 14 will then be moved downward as in the '214 patent and will drive a staple through the material and cause the ends of the staple to be clinched by the anvil. Though this patent also ascribes the sequence of this operation to the relative size of the bores in which the pistons move and to the relative distances through which the two pistons travel, it appears to me that the sequence in reality depends upon the sizes of the two springs 22 and 58. The spring 58 being weaker than the spring 22 offers less resistance and thus moves first.

Hand operated stapling machines of the plier type including movable clinching anvils such as: The Duo-Fast plier in evidence as defendant's exhibit 65; Allen, patent No. 1,900,683; Cavanagh, patent No. 2,095,659; Walker, patent No. 2,232,016 all disclose tools where by squeezing the handle the anvil is pulled up to the nose of the gun. By further pressure a spring is cocked which fires a staple against the anvil. The anvil moves first because the spring pressure there is less than the pressure on the piston.

Pneumatically operated driving and clinching machines are also fully exemplified in the prior art. Specifically, the Hanna patent, No. 1,875,448 issued in 1932 discloses in figs. 4 and 5 a riveter construction with a single cylinder with two pistons in it and a pipe 52 which forces air between the two pistons. The spring holding the number 42 is lighter than the spring holding the piston 60 and the driving number 62. Therefore, the piston 49, offering less resistance, will move first thus pulling the anvil 42 up to the rivet. Once stable, the pressure is built up moving the piston 60 and the driving member 62 to clinch or head the rivet. Webster, patent No. 300,174 and McSherry patent No. 963,924 also disclose pneumatically operated clinching anvils which provide compensation for varying thicknesses of work.

The basis of the '522 patent is in the provision of a pneumatic stapling tool having an anvil which is self-adjusting in combination with the basic provisions of the '214 patent. Considering the above cited examples of manually operated stapling machines of the plier type and pneumatically operated driving and clinching machines, I hold that the '522 patent is merely a logical step forward plainly indicated by prior art and developed by mechanical skill. As such, it is of course not invention. Shell Development Co. v. Pure Oil, D.C. 111 F. Supp. 197; Walter Kidde & Co. v. United States, 41 F.Supp. 225, 94 Ct.Cl. 366. Further, the combination of old elements in the '522 patent does not produce a new and unexpected result. Borkland v. Pedersen, 7 Cir., 244 F.2d 501. Therefore, I hold the '522 patent invalid for lack of invention.

Though Senco and Fastener each accuse the other of watching its developments in the stapling field it appears from the evidence that possibly, Senco's inventor Juilfs, and Fastener through Murphy and General Motors, were approaching the same development, in the same field at the same time, without either actually stealing ideas from the other. It seems clear that both of these parties were prominent and active in the art and each achieved at about the same time a manifest improvement over existing devices. Evidence of this simultaneous development of the '214 and '522

patents by Senco and DW–5018 and DWP–5018 by Fastener further substantiates my holding that the '214 and '522 patents are not inventions but constitute definite improvements, the result of expert mechanical application of principles long in the prior art or public domain. Hazeltime Corporation v. General Motors Corporation, 3 Cir., 131 F.2d 34; Bromley Bros. Carpet Co. v. Stewart, C.C., 51 F. 912, 916; Walker, Patents, p. 27.

■ Since I find the patents in suit invalid and since such finding is dispositive of the case I do not reach the question of infringement. Cover v. Schwartz, 2 Cir., 133 F.2d 541, 545; Thys Co. v. Oeste, D.C., 111 F.Supp. 665.

It is accordingly ordered, adjudged and decreed, for the reasons stated, that the patents in suit, Juilfs No. 2,671,214 and Juilfs No. 2,687,522 are invalid. The cause is hereby dismissed at plaintiff's costs.